UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MANUSHKA GILET,

    Plaintiff,

v.                                                            Case No. 2:20-cv-457-NPM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____

**OPINION AND ORDER**

Plaintiff Manushka Gilet seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 17),[1] and the parties filed a joint memorandum (Doc. 21). As discussed in this opinion and order, the decision of the Commissioner is reversed.

**I.**     **Eligibility for Disability Benefits and the Administration's Decision**

    **A.**     **Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.  Factual and procedural history

On October 5, 2018, Gilet applied for child's insurance benefits and supplemental security income. (Tr. 15, 216). Gilet asserts an onset date of October 24, 2016, alleging disability due to blind or low vision; PTSD; bipolar disorder; anxiety disorder; agoraphobia; and IBS. (Tr. 80, 100, 229). As of the alleged onset

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

date, Gilet was 21 years old with some college education. (Tr. 43-44). Her past work included jobs as a cleaner, fast-food worker, and management trainee. (Tr. 63).

On the administration's behalf, a state agency[5] denied Gilet's applications initially on January 9, 2019, and upon reconsideration on June 26, 2019. (Tr. 15, 138, 141). At Gilet's request, Administrative Law Judge (ALJ) Raymond Rodgers held a hearing on January 6, 2020, concerning the merits of Gilet's applications. (Tr. 36-66, 164-169). The ALJ issued an unfavorable decision on January 30, 2020, finding Gilet not disabled from October 24, 2016, through the date of the decision. (Tr. 12-29).

Gilet's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Gilet then brought the matter to this court, and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 16).

## C.     The ALJ's decision

An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a).

>impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether, in light of her age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish the existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

In this matter, Gilet was under 22 years of age as of the alleged onset date. (Tr. 18). At step one of the evaluation, the ALJ found Gilet had not engaged in substantial gainful activity since her alleged onset date. *Id.* At step two, the ALJ characterized Gilet's severe impairments as: migraine headaches, irritable bowel syndrome (IBS), bipolar disorder, post-traumatic stress disorder (PTSD), anxiety and depression." *Id.* At step three, the ALJ determined Gilet did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id.*

As the predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to: lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for 6 hours in an 8 hour workday; occasional climbing of ramps or stairs but may never climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling and crouching; no crawling; must avoid concentrated exposure to extreme heat, humidity and vibration; no exposure to very loud noise as defined by the SCO code or extreme bright lighting; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carryout simple tasks; low stress work defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction except incidental with the public.

(Tr. 21).

But because none of Gilet's prior work experience met either the durational or substantial gainful activity requirements, there was no occasion to make a step-four finding about whether Gilet could perform any past relevant work. (*See* Tr. 28). At step five, the ALJ found Gilet could perform other work that exists in significant numbers in the national economy. (Tr. 28). In support, a vocational expert testified three occupations represent the kinds of jobs an individual with Gilet's age, education, work experience, and RFC could perform:

- electronics worker (DOT #726.687-010, light, SVP 2, 70,000 jobs nationally);
- production assembler (DOT #706.687-010, light, SVP 2, 200,000 jobs nationally); and
- bench worker (DOT #713.684-018, light, SVP 2, 100,000 jobs nationally).

(Tr. 29).[6]

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations

## II.   Analysis

The issue on appeal is whether the ALJ's RFC assessment properly accounts for Gilet's mental health limitations. (Doc. 21, p. 14).

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v.*

---

concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

*Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (citation omitted).

### B. Whether the RFC assessment properly accounts for Gilet's mental health limitations.

Gilet argues the court should vacate the ALJ's decision because the RFC assessment does not properly account for all of the mental health limitations caused by her bipolar disorder. (Doc. 21, pp. 14-17). This contention has merit and warrants reversal.

A determination that bipolar disorder is a severe[7] impairment means that this disorder significantly limits the claimant's physical or mental ability to do basic

---

[7] Notably, the term "severe" in a social-security-disability analysis differs from its use in common parlance. The claimant's burden at this stage of the analysis is "mild," and an "impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). In other words, non-severe impairments are "slight" or "trivial" abnormalities. *Id.* And the distinction between a severe and non-severe impairment rests not on common perceptions, but on

work activities. *See* 20 C.F.R. §§ 404.1520(c), 404.1522(a); *see also Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) ("By definition, a severe impairment limits significantly a claimant's ability to do basic work activities."). Indeed, the ALJ acknowledged this when finding that Gilet's bipolar disorder is a severe impairment. (Tr. 18). However, there is no indication that any limitations from this severe impairment were incorporated into Gilet's RFC.

In fact, the ALJ failed to even mention the term "***bipolar disorder***" in his RFC analysis or anywhere else in the decision.[8] (Tr. 21-28). Here, the ALJ's analysis falls short of what the law requires. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) ("And while it mentions that Schink had bipolar disorder, the decision contains no real discussion of how the mental condition affected Schink's RFC. Indeed, most of the references to Schink's bipolar disorder in the RFC section

---

whether the impairment significantly limits a work-related activity. *See Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 878 (11th Cir. 2012) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Thus, even when diagnosed and prescribed medications for anxiety and depression—which, in a lay sense, could fairly be considered severe—such impairments are not severe in the social-security-disability context when they don't interfere with any work-related abilities. *Smith*, 601 F. App'x at 879. But when they do have effects on work-related abilities, they are, for purposes of the five-step analysis, severe. *See Schink*, 935 F.3d at 1268. This is not to say that non-severe impairments are ignored; either standing alone or in combination with other impairments they may limit work-related abilities. Consequently, when formulating an RFC, an ALJ must account for both severe and non-severe impairments. *See* 20 C.F.R. § 404.1545(a)(2).

[8] While the ALJ found at step three that Gilet's mental health impairments did not satisfy the severity criteria for a bipolar (or any other) condition to be a disabling impairment, he did so without making any reference to Gilet's bipolar disorder.

9

are purely biographical or occur within summaries of medical examinations relating to Schink's physical conditions.").

Because the ALJ did not specifically discuss the limiting effects of Gilet's bipolar disorder, despite finding it to be a severe impairment, he has committed reversable error. *See Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020) (reversing the dismissal of benefits because "[t]he ALJ did not account for unexcused absences or time spent off-task, which were limitations caused by Ms. Samuels's bipolar disorder that were reflected in the record."); *see also Hanna v. Astrue*, 395 Fed. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review …. Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which [the court] can review."); *cf. Delaney v. Comm'r of Soc. Sec.*, No: 6:20-cv-2398-DCI, 2022 WL 61178, *4 (M.D. Fla. Jan. 6, 2022) (affirming the ALJ's decision because, among other things, he "properly considered the episodic nature of Claimant's bipolar disorder.").

Further, the decision does not provide information regarding what limitations the ALJ ultimately attributed to Gilet's bipolar disorder. And while the RFC limits Gilet's ability to "understand, remember, and carry out simple tasks; low stress work defined as only occasional decision-making and only occasional changes in the work

10

setting; occasional interaction with coworkers and supervisors; and no interaction except incidental with the public" (Tr. 21), the ALJ failed to connect any of these limitations to the severe impairment of bipolar disorder. Nor is any such connection obvious. *Pinder v. Comm'r of Soc. Sec.*, No.: 6:20-cv-1164-MRM, 2021 WL 6062378, *4 (M.D. Fla. Dec. 22, 2021) ("[T]he Court finds that the ALJ did not provide enough discussion to permit a meaningful judicial review into whether the ALJ properly considered Plaintiff's bipolar disorder.").

The court should not be forced to speculate whether an RFC accounts for a claimant's severe impairments. Yet, here, the court was faced with this task regarding Gilet's bipolar disorder. And when placed in this position, the court routinely remands for further consideration. *See, e.g., Mancini v. Comm'r of Soc. Sec.*, No. 2:19-cv-798-JLB-NPM, 2021 WL 1090826, *8-9 (M.D. Fla. Feb. 22, 2021), *report and recommendation adopted*, No. 2:19-cv-798-JLB-NPM, 2021 WL 1087270 (M.D. Fla. Mar. 22, 2021) (finding the ALJ failed to properly consider the impact of claimant's migraine headaches on her RFC). The Eleventh Circuit has ruled in similar fashion. *See, e.g., Raduc*, 380 F. App'x at 898 (reversing denial of disability benefits because the ALJ found IBS to be a severe impairment, but "the ALJ's analysis fails to discuss how IBS might affect [the claimant's] ability to perform her job duties.").

In short, "the ALJ did not meaningfully conduct the proper legal analysis about the effect of [Gilet's bipolar disorder] on her RFC." *See Raduc*, 380 F. App'x at 899. This error was not harmless and warrants remand. *See Schink*, 935 F.3d at 1245; *see also Samuels*, 959 F.3d at 1042.

### III. Conclusion

Upon consideration of the submission of the parties and the administrative record, the court finds the decision of the Commissioner is not supported by substantial evidence.

It is **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). "Any issues relating to the claim(s) may be considered by the Appeals Council or administrative law judge whether or not they were [previously] raised in the administrative proceedings." 20 C.F.R. § 404.983(a). The Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 30, 2022.

*Nicholas P. Mizell*
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE